Judge Walker, who has been here far longer than I have, reminded me that I should do you all the favor and courtesy of informing you that unfortunately Judge Radji cannot be present today. She is still a member of this panel and will participate in deciding these cases. As you all know, I'm sure, having been here before, that all of these arguments are recorded, so she will have the opportunity to listen to those. And she regrets that she can't be with us this morning, so hence my presence here, not withstanding the fact that she was announced as the presider on this panel. Now we will begin with the case Lynn v. U.S. Department of Homeland Security. Good morning. Good morning. May it please the court. My name is Edward J. Kucha and I am an attorney representing Ms. Ying Lynn, the plaintiff appellant in these proceedings. Ms. Lynn is a national citizen of the People's Republic of China. She is married to an American citizen. She is the mother of two American citizen children. And she has been fighting for the last 18 years now for the right to stay here in the United States. Ms. Lynn first came to America when she was two weeks past her 18th birthday, and it is unfortunately that entry to the United States that's caused her all sorts of woe. Subsequent to that entry, she has married and her husband, her American citizen husband, has filed a visa petition for her and she has sought adjustment of status to lawful permanent resident of the United States. So just to fill out the facts, she came in on a passport bearing some other name and it was an American passport. She was neither that person nor was she an American citizen. Absolutely correct. And nobody's ever disputed the fact that she came in under fraudulent pretenses. Absolutely correct. And then when she applied for naturalization, she didn't mention the prior fraud. Is that correct? For adjustment of status. Adjustment of status. Okay. I meant that. Ms. Lynn's application for adjustment of status was complicated. We have always taken, and I've represented Ms. Lynn for many, many years, we've always of fraudulent documentation. She is not legally responsible for that fraud for many reasons. They've been outlined below extensively. You mean the fraud, the initial fraud? Correct. Correct. Including many reasons. One, under the AMOCA decision that this court has rendered, she timely retracted, she recanted her fraud at first opportunity. Two, statements made at the airport that were recorded at the airport immediately after her arrival shows that she was, for lack of a better word, clueless. They asked her name, her nationality, her intent. She had no answers for any of that. My understanding is that the agency, the IJ here, wasn't relying on that first fraud anyway in reaching the decision that he reached, or she reached. There were a number of different decisions, Judge. I'm not sure which you're speaking of. Well, I thought that the problem was not so much the first fraud, but the failure to mention the fraud in the second, in the application for adjustment of status. To the best of my mind, there has been, and again, I handled this case for many, many years, it has been that first fraud, that first American passport fraud that has haunted Ms. Lynn throughout the years. Her denial of that fraud has been in contention, there's no question about it. So anyway, the two questions I gather, one is whether she was ineligible because of a fraudulent entry, and the second is whether the application was denied as a matter of something that we can review. Absolutely, Judge, and I will say that there are two parts to the USCIS denial, and one clearly is discretionary, but the USCIS denial has consistently made determinations of law, and we believe those determinations to be incorrect legal determinations, and solely and only are those legal determinations before the district court, and we're asking this of you. We do... Did those, did any errors of law matter? I thought they were weighing positives and negatives in terms of the facts here. I believe they do matter. If Ms. Lynn is not legally responsible for that first fraud back when she was just two weeks past her 18th birthday, no negatives can flow from it, it's sort of the fruit of the poisonous tree. If we can nip the tree in the butt, there are no negative equities. If there was no fraud because she was not legally responsible for that fraud when she first came in, then all the negatives that flow from it disappear, and there are no negatives. That's essentially our contention. Mr. Kuchar, can you discuss our jurisdiction to hear this case in the first instance? It strikes me that you've got a problem there. Yes, Judge, there's no question. It's 8 U.S.C. 1252A5, the preclusion part, and you're absolutely right, Judge, I do have a problem. We're arguing that our way around the preclusion has to do with the unique status of Ms. Lynn as an arriving alien to the United States. Immigration laws are unnecessarily complex, and one of the complexities in there is the arriving alien subsection of aliens in the United States. In most cases, aliens to the United States who seek adjustment of status must go through the Board of Immigration Appeals, the immigration courts, and that setup. Arriving aliens are exempt from all of that. The Board of Immigration Appeals, the immigration judges, have no jurisdiction over arriving aliens' applications for adjustment of status. Even more, they actually have, quote, no authority, even more than no jurisdiction, over these applications. And this is Board precedent decision, matter of Yowery, back in 2009. And it is upon that which we rest our argument that the 1252A5 preclusion does not apply. And she continues to be in arriving status? Correct. Correct. Correct. Could you just waltz me through how that works? When Ms. Lynn arrived at the airport, she made an application for admission to the United States, as all people do. And I think the immigration officers at the airport immediately realized, hey, you're not an American citizen. And they brought her into, she didn't speak English, they brought her into the secondary inspections, got her an interpreter, and that's when all the truth came out. What they did then was they said, okay, you're not admissible, you can't come into America. Instead, we're going to parole you in as an arriving alien. And she's maintained that status ever since. And do we have any case law that supports the argument you would like us to accept? There is, and Judge, I am noticing my time is nearing an end, but there is, and actually before you're on this, before this court, there is a case, Sing v. USCIS, where an applicant made virtually the exact same argument that I'm making, and that is 16-1729 here. It's on appeal, there's not yet been a decision reached. And the district court below reached a similar decision that Judge Chen reached in my case, saying that the 1252... The same case, I'm sorry. 16-1729. Yeah. 16-1729. I believe those cases are essentially identical in the issues. Right. So if we were to get to that point, we would, that case would have precedent over this one. I think so. It should be before us. Thank you, Mr. Cuccia. You've reserved three minutes for rebuttal. Judges, thank you. To please the Court, Elliot Shachner, Assistant United States Attorney, Eastern District of New York, for the defendants of Pellease. You heard your adversary say that we, to argue that we shouldn't affirm on the basis of the judge's exercise of discretion because of a misunderstanding of, a mistake of law. Could you address that point? Yes, Your Honor. I mean, there, there, unfortunately, that argument is contrary to this Court's decision in the Ling Yang case, which we cited in our brief. Under Ling Yang, where there's a determination of statutory ineligibility and also a determination a discretionary determination, and the discretionary determination is based upon at least one factor other than the statutory ineligibility determination. The entire decision is unreviewable, and as I said, that's a, that's a reported decision by this Court from 2008, I believe. So that's, that is addressed in our brief to the extent that, and I believe, so I believe we've adequately addressed it. If not, I should point out that the plaintiff did not address the discretionary issue, so to speak, in its briefing here. But we, but at any event, we believe that under Ling Yang, that argument lacks merit. Okay. Now, with respect to the arriving alien argument, as opposing counsel forthrightly conceded, the one case which has reached that issue actually ruled in favor of the government, the Singh case that's on appeal to this Court, and as of this morning, at least, there was no decision from this Court in that case. It's been argued, I think, hasn't it? Yes, it was argued. But I believe that in mid-December, Your Honor, I, again, I, just for the record, my office didn't handle that case, but I've been checking the docket sheet. So the decision is, if the case is still sub-udicy before this Court. I mean, as to, you know, as to an arriving alien, as to what an arriving alien is, I mean, it's, it really doesn't make a difference for our purposes. Again, first of all, of course, the arriving alien has, argument has nothing to do with the discretionary determination argument. So the Court doesn't even have to reach the arriving alien argument. It could simply affirm on the basis that, on Ling Yang, basically, that, you know, there was a discretionary determination here. But should the Court wish to consider or reach the arriving alien argument, it really doesn't make a difference. The argument conflates two separate issues. One is the issue of USCIS's jurisdiction to handle, to adjudicate the adjustment application. The other one is the discretion, is the jurisdiction, subject matter jurisdiction of the district court to decide to have APA review over the case. Those are two entirely different questions as the district court for the District of Columbia held in the Chen case that's cited in our brief. So, uh, uh, the fact that, uh, the immigration regulations, uh, which generally require that a person to remove proceedings file or have his or her adjustment application decided by an IJ, contains an exception for arriving aliens, really is of no moment here. Uh, other than that, Your Honor, I mean, uh, and this, I guess, goes back to a certain extent to the, to the argument that, um, the, um, uh, that, uh, the, the finding of an admissibility was incorrect. Again, the plaintiff had an opportunity to contest that and remove the proceeding, but of course she did not, uh, she failed to appear in immigration court. So, uh, to the extent that, uh, uh . . . So it's waived or forfeited or . . . I, well, I mean, as a matter of removal proceeding, that's an issue we don't have to have here. I just point that out that, you know, if, if, you know, plaintiff did have an opportunity, uh, to, uh, to contest that and remove the proceeding had she, and, and had she not absconded, she could have, and appear, continue to appear in immigration court. She could have perhaps argued that again, uh, before the immigration judge, certainly taken an appeal to the BIA and, uh, if necessary, sought a petition for review from, I believe, this court or whatever the appropriate court of appeals would be. So, but as I, as I mentioned before, in light of the, of the, uh, discretionary issue here, so to speak, I mean, the court really not, doesn't even have to reach that issue or for that matter, more generally, the so-called arriving alien issue. Other than that, uh, the position of the defendants' appellees is, is set forth, uh, in their briefs. So if the court has no further questions, uh, the defendants' appellees will relinquish the remainder of their time. Thank you, Mr. Shachner. And thank you, Mr. Shachner, um, briefly judge, uh, I'll touch on both of the issue of discretion and, uh, we'll start with that. Uh, judge, my argument, judges, my argument would be that all of the negative, negative discretionary elements flow from an incorrect legal decision. So while of course USCIS coached their determinations in discretionary language, it's not really discretionary language if it flows from an incorrect legal determination. If there was no fraud, all negative effects of fraud disappear. So I would argue that, that therefore the entire decision is reviewable. What you're doing here is trying to, you're making a legal argument that there's no fraud as a way of washing away the facts that she appeared at the border with a fake passport, a passport, fake or not, a passport that didn't apply to her. No, you're absolutely right. Leave that, leave the legal conclusion of whether there was fraud or not, or whether she remedied the situation afterwards or not, why couldn't an IJ take into account that she did that? Yes. And then, and then in her favor is that she wanted to remedy it afterwards, uh, but take it into account, even though maybe legally the fraud was wiped out. She never got that opportunity, judge. She was charged upon entry with fraud, but there are two types of fraud under the Immigration Nationality Act. No, I'm talking about what the IJ did as a matter of discretion. I understand. Uh, in, in the, in the adjustment. Later on, consider the facts, consider the, consider, you could consider these facts independently of whether or not they legally, when taken together, amounted to a fraud. You're absolutely correct, Your Honor. They didn't do that. They simply said she came with a fake passport, negative discretion, done. Well, they did. But, but remedying that entry, remedying that fraud cleans the fraud, wipes it away. And what's the path we take? Write the decision for us. All right, Judge. Very briefly. Briefly. Um, okay. One, uh, the, the, to start off with the discretionary elements, uh, all the decision of USCIS denying the adjustment was purely a legal determination because the discretionary elements flowed from an incorrect legal determination. There are no negative equities, therefore, there should not have been any negative discretionary findings. That's issue number one. Issue number two, uh, the, there is no preclusory effect because the, uh, arriving alien status of Ms. Lynn exempts that. Got that. That's the decision. And there is no fraud at the front end? That would be my argument. There is no fraud on the front end. Uh, that is fairly well documented. Again, she came when she was two weeks past her 18th birthday, got off the plane not speaking a word of English. Somebody shoved an American passport in her hand. She walks up to a counter, clueless, and they bring her into the back of her interpreter. They say, what's your name? She tells her name. What country are you of? Where are you of? What's going on? There is no fraud. The, the, the question and answer is provided, documented, taken at that time, show a young woman who is without knowledge of what she's doing. There is no fraud. She had no knowledge of the fraud. She timely retracted her fraud. Uh, she wasn't even charged properly. She wasn't charged with American citizenship fraud going back to the IJ. The initial I, the initial charge was never American citizen fraud, it was just generic fraud of which doesn't even make sense because that's the only possible fraud was American citizen fraud. There are errors here. Judges, thank you. Thank you so much. Thank you, Mr. Chairman. Thank you. Thank you. Thank you both. We'll reserve decision in this case.